United States District Court
Northern District of Alabama
Eastern Division

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT ] ] ] OF ] ] ALLEN MCWILLIAMS for his ] interest in and to that vessel ] identified as a 1997 MasterCraft ] boat bearing hull number ] MBCUSGWB797, a vessel as ] defined by the Limitation of Vessel ] Owners Liability Act, for ] EXONERATION FROM OR ] LIMITATION OF LIABILITY, ] | CV-01-N-3375-E<br><br>ENTERED<br>JAN 1 3 2003 |

**Memorandum of Opinion**

**I.   Introduction**

The court has for its review the motion for summary judgment of Limited Liability Plaintiff Allen McWilliams ("McWilliams") for a statement limiting his liability in a MasterCraft boat bearing hull number MBCUSGWB797, a vessel under the Limitation of Vessel Owners Liability Act, 46 U.S.C. App. § 183 *et seq.* and a cause for exoneration from or limitation of liability, civil and maritime, within the meaning of Rule 9(h) and Supplemental Rule F of the Federal Rules of Civil Procedure. The issues have been briefed by both parties and the matter is ripe for review. Upon due consideration of the caselaw, statutes and the arguments of both parties, the court finds the motion is due to be denied and the case due to be dismissed for lack of jurisdiction.

**II.   Statement of Facts**



This case relates to the complaint brought by Claimant Christie Melvin ("Melvin") with the Circuit Court of Talladega County, Alabama, which involves an accident that occurred on July 23, 2001, in the Poor House Branch. portion of Logan Martin Lake.[1] The Complaint asserts that McWilliams "Negligently and wantonly entrusted his boat to Steven M. Carroll, and negligently and wantonly advised, informed, instructed or otherwise acted or omitted to act with regard to the said boat and to Steven M. Carroll proximately causing or contributing to the injuries of Plaintiff." (Doc. # 21 Exh. A). McWilliams asserts that he was not aware of the accident until a number of weeks after it occurred and that he was unaware of Carroll's incompetency to operate the vessel.[2]

Melvin contends that no tributary of the Coosa emanating from Logan Martin Lake or Poor House Branch reaches any other state or foreign territory, nor the open sea. The lake is blocked on the north, or upstream end, by Neely-Henry Dam, and on the south, or downstream end by Logan-Martin Dam. Both dams are massive concrete structures which, according to Melvin's evidence, prevent travels into the open sea. Melvin's reports indicate that it would require many millions of dollars to make Lake Logan-Martin "susceptible of being used" as a boat route to Georgia or to the Gulf of Mexico and that there are not current or active plans to attempt such an undertaking. Thus, there is no boat in existence which can travel by water over, under, past or through either Neely-Henry Dam, or Logan-Martin Dam.

---

[1] Melvin claims the incident happened on Poor House Branch. McWilliams's complaint more generally states the Logan Martin Lake portion of the Coosa River.

[2] Melvin does not dispute when McWilliams learned of the accident but believes more discovery is necessary regarding the issue of his knowledge of Carroll's competence.

### III.     Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

**IV.   Discussion**

Before the court can address the questions of the Limitation of Liability Act, it must first determine whether it has jurisdiction. Admiralty jurisdiction as to torts requires (1) locality (the situs of the waterway) and (2) nexus (the status of the vessel or activities). Locality is satisfied by navigable waterway, while nexus is satisfied by a sufficient relationship of the vessel to the maritime activities. *Sisson v. Ruby*, 497 U.S. 358 (1990); *Bunge Corp. v. Freeport Marine Repair, Inc.*, 240 F.3d 919, 924 (11th Cir. 2001) ("[t]o satisfy the test the tort need only occur on navigable waters"); *In re Three Buoys Houseboat Vacations U.S.A. v. Morts*, 921 F.2d 775, 777 (8th Cir. 1990) (citing the standard). This case turns only on the question of whether the Poor House Branch is a navigable waterway for purposes of admiralty jurisdiction.

The test for whether a particular body of water is "navigable" for the purposes of admiralty jurisdiction was first enunciated by the United States Supreme Court in *The Daniel Ball* in the context of rivers. The Supreme Court held that:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

*The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563 (1870). Applying the test four years later in *The Montello*, the Supreme Court explained:

> The vital and essential point is whether the natural navigation of the river is such that it affords a channel for useful commerce. If this be so the river is navigable in fact, although its navigation may be encompassed with difficulties by reason of natural barriers, such as rapids and sandbars.

*The Montello*, 87 U.S. (20 Wall.) 430, 443 (1947). The Supreme Court subsequently held that this test applies to all bodies of water, natural and also artificial. *In re Boyer*, 109 U.S. 629, 632 (1884). In recent times, one court has defined navigability as "a body of water which, in its present configuration, constitutes a highway of commerce, alone or together with another body of water, between the states or with foreign countries over which commerce in its current mode is capable of being conducted." *Alford v. Appalachian Power Co.*, 951 F.2d 30, 32 (4th Cir. 1991); *see also* Grant Bilmore and Charles L. Black, The Law of Admiralty § 1-11 (2nd ed. 1981) (noting "all waters, salt or fresh, with or without tides, natural or artificial, which are in fact navigable in interstate or foreign water commerce, whether or not the particular body of water is wholly within a state, and whether or not the occurrence or transaction that is the subject matter of the suit is confined to one state). "Navigability is a term subject to different definitions depending upon the context of a case. In some cases the term has a different meaning from that expressed in admiralty cases." *Three Buoys Houseboat Vacations v. Morts*, 921 F.2d 775, 777 (8th Cir. 1990) (citing *Kaiser Aetna v. United States*, 444 U.S. 164, 170-72 and n.7 (1979)). The current test of whether a stream is navigable for admiralty purposes is that of "present navigability." That is whether the lake can currently be used for navigable purposes. *Id.* at 779; *Appalachian Power*, 951 F.2d at 32; *Dunham v. Demaine*, 559 F. Supp. 224 (E.D. Ark. 1983) (lake is not navigable where it is "not usable for commercial shipping and there is no reasonable likelihood that

the lake will be rendered susceptible of use for commercial shipping in the foreseeable future."); *Motley v. Hale*, 567 F. Supp. 39, 41 (W.D. Va. 1983) (appropriate test is "navigability in fact"); *Dunaway v. United States*, 2000 U.S. Dist. LEXIS 17261 E.D. La. 2000); *Casciani v. Pruett*, 109 F. Supp. 2d 894, 897 (M.D. Tenn. 2000); see also *Acadia Ins. Co. v. McNeill*, 116 F.3d 599, 602, n. 4 (citing aforementioned cases with approval). Thus, merely because a body of water was once navigable, does not mean that it is presently so. *Reynolds v. Bradley*, 644 F. Supp. 42, 44 (N.D.N.Y. 1986) (body of water once navigable does not retain that character *ab infinitum*); Lawrence D. Bradley, Jr., *The Supreme Court and Maritime Jurisdiction*, 25 Maritime Lawyer 207, 219 (2000) ("Waters which were once navigable become nonnavigable if a dam is erected and leaves the body of water behind the dam entirely within the borders of a state.").

McWilliams cites to two cases which held that the Coosa was a navigable waterway for admiralty purposes. In *Band Corp. v. Alabama Power*, the court took judicial notice of the fact that "the Coosa River is a navigable stream." 370 F. Supp. 1044, 1046 (N.D. Ala. 1973). There, the court addressed a portion of the Coosa River which was home to the owner of a textile-manufacturing plant located on the riverbank – clearly, an area where boats were capable of travel for interstate commerce. Likewise in *Alabama Power Co. v. Gulf Power Com.* the Alabama Supreme Court took judicial notice of the navigability of the Coosa and held it was "navigable in fact at least in part in Georgia and Alabama, although it may not be known as a matter of common information at what particular place between its mouth and its source its navigability ceases." 283 F. 606, 613 (Ala. 1922). The court finds

that both cases are inapplicable to the Poor House Branch and Lake Logan-Martin tributaries of the Coosa.

While the court has no doubt that there are large portions of the Coosa River which are navigable, it finds that Poor House Branch is not one of them. McWilliams does not dispute that Poor House Branch was the site of the accident. Likewise he does not dispute that it is presently sealed in by the Logan-Martin Dam and the Neely-Henry Dam such that there is no boat in existence which can use Lake Logan-Martin as a means to reach Georgia or the Gulf of Mexico. Accordingly, it appears impossible that "a substantial boat must be able to go from the body of water in question either to another state or to a foreign country on the water." *Three Buoys Houseboat Vacations v. Morts*, 921 F.2d 775 (8th Cir. 1990). Moreover, despite the fact that portions of the Coosa are navigable does not obligate the court to expand its navigability *ab infinitum*. For example, in *Smith v. Hustler, Inc.*, the court found that although a lake was navigable at the time Louisiana entered the union, it was not sufficiently navigable for present day purposes. 514 F. Supp. 1265, 1267-68 (W.D. La. 1981); *see also Appalachian Power Co.*, 951 F.2d 30, 32 (fact that a lake attached to a navigable river irrelevant for present navigability purposes); *Adams v. Montana Power Co.*, 528 F.2d 437, 440-41 (9th Cir. 1975) (fact that a lake was once part of the Navigable Missouri River irrelevant for present navigability test); *Dunham v. DeMaine*, 559 F. Supp. 224 (E.D. Ark. 1983) (lake not navigable because it did not allow inlet into the Ouachita River system).

As the court has found that the river system is not presently navigable, it dismisses the case for lack of jurisdiction.[3]

**V.      Conclusion**

The court will enter an order in accordance with this memorandum of opinion.

Done, this __10th__ of January, 2003.

Edwin Nelson
United States District Judge

---

[3] Although the court declined to reach the issues presented by the Limited Liability Act, it notes that since approximately 1930 judicial enthusiasm for limiting liability to the valie of the shipowner's boat has cooled. *See generally* Grant Gilmore and Charles L. Black, Jr. The Law of Admiralty § 10-4 (2nd Ed. 1981).